# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SELETHA B. ALLEN**                              **CIVIL ACTION NO.**

**VERSUS**

                                                  **20-778-BAJ-EWD**

**MANUFACTURERS ALLEGIANCE
INSURANCE COMPANY, ET AL.**


      Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on April 23, 2021.


**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SELETHA B. ALLEN                                   CIVIL ACTION NO.

VERSUS
                                                   20-778-BAJ-EWD

MANUFACTURERS ALLEGIANCE
INSURANCE COMPANY, ET AL.

MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Before the Court is the Notice of Removal filed by Defendant Ray Carroll ("Carroll").[1]

Plaintiff Seletha B. Allen ("Plaintiff") has not filed a motion to remand; however, as Carroll has

not established the requisite amount in controversy, it is recommended[2] that this matter be

remanded to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana

*sua sponte*.

I.      **Background**

This is a civil action involving claims for damages by Plaintiff based upon the injuries she

allegedly sustained on September 14, 2019[3] while travelling on Interstate 12 in Louisiana (the

"Accident").[4] Plaintiff alleges that the multi-vehicle accident was caused by Carroll, who was

operating his vehicle while in the course and scope of his employment with Defendant Colonial

---

[1] R. Doc. 1.

[2] *See, e.g., Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." )

[3] Plaintiff's Petition and Carroll's Memorandum in Support of the Amount in Controversy state that the Accident occurred on September 14, 2019. R. Doc. 1-9, pp. 1-4; R. Doc. 5, pp. 2, 4. However, many of Plaintiff's sealed medical records refer to the Accident as occurring on September 13, 2019. *See, e.g.,* R. Doc. 10, pp. 6, 14, 17, 19, 26.

[4] On November 30, 2020, this case was consolidated with *Watts v. Manufacturers' Alliance Insurance Company, et al.,* No. 20-779, (M.D. La.) for discovery purposes only because the two cases involved the same motor vehicle accident and the same defendants. R. Doc. 3 and No. 20-779, R. Doc. 4. *Watts* subsequently settled and was dismissed. No. 20-779, R. Docs. 7, 11. *Waitr, et al. v. Carroll et al.* No. 20-854, (M.D. La.) also involves the same accident and some of the same parties, and it also settled and was dismissed. No. 20-854, R. Docs. 9, 10.

Logistics, LLC ("Colonial"), and was insured by Defendant Manufacturers' Allegiance Insurance Company ("Manufacturers'") (collectively, "Defendants").[5] On September 1, 2020, Plaintiff filed her Petition for Damages ("Petition") against Defendants in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[6] Plaintiff claims that she suffered personal injuries as a result of the Accident, caused by the negligence of Carroll, for which Colonial is vicariously liable.[7] On November 17, 2020, the matter was removed by Carroll to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332.[8] The Notice of Removal properly alleges that Plaintiff is domiciled in Louisiana; Carroll is domiciled in Arizona; Colonial is a limited liability company whose three members are domiciled in Texas; and Manufacturers' is a Pennsylvania corporation with its principal place of business in Pennsylvania;[9] therefore, complete diversity of citizenship exists.

However, and as set forth more fully in the Court's November 30, 2020 Order, the Notice of Removal was deficient because Carroll did not establish that Plaintiff's damages are likely exceed $75,000, exclusive of interest and costs.[10] Carroll was ordered to file a memorandum and supporting evidence concerning whether the amount in controversy requirement of 28 U.S.C. § 1332 is met, and Plaintiff was ordered to file either a Notice stating that Plaintiff did not dispute that Carroll established the jurisdictional requirements of 28 U.S.C. § 1332, or a Motion to Remand.[11] Carroll filed his Memorandum in Support of the Amount in Controversy

---

[5] R. Doc. 1-9, pp. 1-3, ¶¶ 3-6, 9.
[6] R. Doc. 1-9, pp. 1-4.
[7] R. Doc. 1-9, p. 2, ¶¶ 7-8.
[8] R. Doc. 1, introductory paragraph and ¶ 24. Colonial and Manufacturers consented to removal. R. Doc. 1-6; R. Doc. 1, ¶ 23.
[9] R. Doc. 1, ¶¶ 16-18, 20-22. Carroll introduced an affidavit, wherein he attests that he resided in Louisiana at the time of the Accident, but his current domicile is in Arizona and was in Arizona at the time the Petition was filed. R. Doc. 1-3.
[10] R. Doc. 4.
[11] R. Doc. 4, p. 5.

("Memorandum"), as well as Plaintiff's medical records under seal, and Plaintiff filed a Notice of No Opposition.[12]   Notwithstanding these actions, because Carroll has not met his burden of establishing by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional threshold, remand is recommended.

## II.    Law and Analysis

### A.  Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[13]   When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[14]   Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint.[15]   The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[16]   The removing party has the burden of proving federal diversity jurisdiction.[17]   Remand is proper if at any time the court lacks subject matter jurisdiction.[18]   The Court has a duty to raise the issue of jurisdiction *sua sponte.*[19]

---

[12] R. Docs. 5, 10, 11.

[13] 28 U.S.C. § 1441(a).

[14] 28 U.S.C. § 1332(a)-(a)(1).

[15] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed").

[16] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). ("Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'");  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (*quoting In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

[17] *Garcia v. Koch Oil Co. of Tex. Inc*., 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[18] *See* 28 U.S.C. § 1447(c).

[19] *Richard v. USAA Casualty Insurance Company,* No. 17-175, 2017 WL 8944429 (M.D. La. Nov. 30, 2017), *citing Gonzales v. Thaler*, 565 U.S. 134, 141 (2012).

## B.  Procedural History Relevant to the Amount in Controversy

The Petition only generally alleges that Plaintiff suffered injuries to her back, neck, knee and shoulder,[20] for which Plaintiff seeks past, present, and future damages to compensate her for: physical pain and suffering; mental and emotional pain, anguish, and distress; medical expenses; loss of income and impairment of earning capacity; loss of enjoyment of life; and other damages to be shown at trial.[21]

In the Notice of Removal, Carroll relied on these allegation in the Petition,[22] and also alleged the following:

> 9.  A lumbar spine MRI performed at Bluebonnet Imaging July 10, 2020 demonstrated a L4-5 disc herniation with posterior displacement of the L5 nerve root and left L5-S1 facet joint hypertrophy (enlargement) with foraminal narrowing.[23]

In Carroll's Memorandum in Support of the Amount in Controversy, Carroll again relies on Plaintiff's claims of injuries to her back, neck, knee and shoulder, and Plaintiff's disc herniation at L4-5.[24]  Carroll also relies on additional medical records received, which were filed under seal and that provide more details regarding Plaintiff's back and knee injuries and treatment.[25] Specifically, just after the September 14, 2019 Accident, Plaintiff visited Our Lady of the Lake Regional Medical Center where she reported complaints of right knee and leg pain and was discharged with medication.[26]  Carroll contends that Plaintiff then received "intervening care" over the next nine months with Mandy's Health Care, but does not have the associated records "due to

---

[20] R. Doc. 1-9, p. 3, ¶ 10.
[21] R. Doc. 1-9, p. 3, ¶ 11.
[22] R. Doc. 1, ¶¶ 8, 10-14.
[23] R. Doc. 1, ¶ 9.
[24] R. Doc. 5, p. 3.
[25] R. Doc. 10.
[26] R. Doc. 10, pp. 2-3, 7.

preliminary nature of discovery in this case (*e.g.*, no exchange of written discovery and no lay or medical expert depositions.)."[27]  Plaintiff then had ongoing treatment with Dr. Thomas Rathmann, D.C. of the Rathmann Chiropractic Clinic from June 25, 2020 until November 4, 2020, although Carroll states that these records are also incomplete (presumably because they do not include records up to the filing of the Memorandum on December 14, 2020).[28]

Dr. Rathmann ordered an MRI of the lumbar spine that revealed the herniated disc at L4-5, "mild levoconvex spinal curvature" (curvature of the spine to the left), and "a small right L3-4 facet effusion with left L5-S1 facet hypertrophy producing mild foraminal narrowing" (fluid and degeneration and enlargement of the joint).[29] Dr. Rathmann also ordered an MRI of Plaintiff's right knee, which revealed soft tissue edema with bursitis (inflammation/swelling in soft tissues), small knee joint effusion (water on the knee) and popliteal cyst, and "patellofemoral chondromalacia" (cartilage breakdown underneath the knee cap).[30] He diagnosed cervicalgia (neck pain), lumbalgia (low back pain), thoracalgia (spine pain), facet syndrome, and right knee pain.[31] The treatment regime recommended by Dr. Rathmann for Plaintiff (and apparently carried out on Plaintiff) consisted of conservative treatments.[32]

Dr. Rathmann referred Plaintiff to orthopedic surgeon Dr. Craig Castleman Greene for evaluation of her right knee.[33]  Dr. Greene saw Plaintiff on July 27, 2020.  At that visit, Plaintiff identified pain on a scale of 7 out of 10 to her right knee, lower back, and/or neck but with pain

---

[27] R. Doc. 5, p. 4 *and see* R. Doc. 10, p. 7, referencing treatment at Mandy's.

[28] R. Doc. 5, pp.  4-5.

[29] R. Doc. 10, pp. 17-18.

[30] R. Doc. 10, pp. 19-20.

[31] R. Doc. 10, pp. 9, 15.

[32] The treatment notes reflect recommended treatment of "chiropractic spinal manipulative techniques," "ischemic compression trigger points," "ultrasound," "intersegmental traction," "electrical muscle stimulation," "moist hot pack," "phototherapy," and "home stretching exercises." R. Doc. 10, pp. 9, 15.  While not entirely clear, the treatment cards at R. Doc. 10, pp. 10-13 contain acronyms that appear to correlate with this recommended treatment, as do the descriptions on the Itemized Statement of Charges. R. Doc. 10, pp. 23-24.

[33] R. Doc. 10, p. 22.

mainly in her right leg, and x-rays were taken of her knee and spine. Dr. Greene diagnosed: right patellofemoral chondromalacia, an L4-L5 herniated disc, bilateral lower extremity radiculopathy (pain, numbness, and tingling), and neck pain.  Dr. Greene recommended that Plaintiff continue conservative treatment with Dr. Rathmann for her back and neck and prescribed Flexeril for muscle spasms and Mobic for inflammation. Notably, Dr. Greene noted that Plaintiff's knee pain "is not mechanical in nature and it is mostly inflammation" which "will continue to improve."[34] Dr. Greene ordered Plaintiff to return in six weeks, *i.e.*, September 7, 2020, which, according to Carroll, establishes that Plaintiff has undergone at least one year of treatment.[35]

Plaintiff responded to the briefing Order with her Notice of No Opposition, stating "Plaintiff Seletha Allen does not dispute the amount in controversy exceeds the jurisdictional amount and agrees that Carroll et al has established the amount in controversy exceeds the jurisdictional limit."[36]

### C. Carroll Has Failed to Establish, By a Preponderance, that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Louisiana law prohibits plaintiffs from specifying a monetary amount of damages in their state court petitions.[37]  When a plaintiff has not alleged a specific amount of damages, a removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.[38]  The removing party may make this showing either: "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'"[39]  Once a removing defendant has

---

[34] R. Doc. 10, pp. 26-27.
[35] R. Doc. 5, p. 6.
[36] R. Doc. 11.
[37] La. C.C.P. art. 893(A)(1); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[38] *Luckett*, 171 F.3d at 298 (*citing De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993)).
[39] *Luckett*, 171 F.3d at 298 (*quoting Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

established, by a preponderance, that the amount in controversy exceeds the federal jurisdictional amount, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[40]

It is not facially apparent from the Petition that Plaintiff's claims likely exceed the federal jurisdictional amount. Plaintiff's general allegations of "back injury; neck injury; knee injury; shoulder injury" that caused her pain[41] fail to provide any specific details regarding Plaintiff's injuries. Likewise, Plaintiff's demands for general categories of damages (*e.g.*, past and future pain and suffering, mental anguish, lost wages and medical expenses),[42] are insufficient to establish the amount in controversy. "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[43] Nor does the Petition provide any information regarding Plaintiff's claimed lost wages or medical expenses. "If the complaint is vague with regard to the types of injuries, medical expenses incurred, and future medical problems resulting from the incident, the court must conclude that it was not 'facially apparent' that the

---

[40] *De Aguilar*, 47 F.3d at 1412.

[41] R. Doc. 1-9, p. 3, ¶¶ 10-11.

[42] R. Doc. 1-9, p. 3, ¶ 11.  Even allegations of permanent disability (which are not alleged here), standing alone with no specification as to the affected body part(s), do not establish that a plaintiff's claims are likely to satisfy the amount in controversy requirement.  *See Heaverlo v. Victoria's Secret Stores, LLC*, No. 07-7303, 2008 WL 425575, at *3 (E.D. La. Feb. 8, 2008) ("Although Mrs. Heaverlo alleges permanent disability, that allegation is not sufficient for the Court to retain this case.  *In Palmer v. Wal–Mart Stores, Inc.,* No. 95–1723, 1996 WL 20862, at *1 (E.D. La. Jan. 17, 1996), the court granted plaintiff's motion to remand even when plaintiff alleged that she sustained severe and possibly permanent injuries, because her allegations were 'fairly 'vanilla'' and did not reveal the extent of her injuries.  Mrs. Heaverlo's allegations are similarly commonplace. Given the accident described in the petition and the lack of evidence as to plaintiffs' likely damages, the Court finds that defendants have not satisfied their burden of showing by a preponderance of the evidence that more than $75,000 was in controversy at the time of removal.").

[43] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, *3 (M.D. La. Jan. 6, 2012) and cases cited therein.

amount of damages would exceed $75,000."[44]  Based on the foregoing, the amount in controversy is not facially apparent from the Petition.

Since it is not facially apparent from the Petition that Plaintiff's damages will exceed the federal jurisdictional amount, the Court must next consider whether Carroll has met his burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000.  Carroll asserts that numerous factors support a finding that the requisite amount in controversy is met. First, Carroll relies on Plaintiff's one year of treatment cited above and asserts: "Due to the preliminary posture of this discovery in this matter, it is unknown of Dr. Greene' opinion on the necessity of surgery, *but defendant offers that clinical correlation between the disc herniation, nerve root compression, and Allen's complaints of bilateral radiation of pain into her legs facially exists*." Carroll argues that the records do not reflect that either doctor discharged Plaintiff from treatment, and thus, her treatment is ongoing.[45]  Carroll also relies on Plaintiff's $10,457.39 in medical expenses, although again asserts that that figure does not represent all of the medical expenses incurred (or the complete treatment provided) because the records are "NOT POSSESSED."[46]

However, Plaintiff's injuries and treatment, even as documented in the records, are not of the severity required to establish that Plaintiff's damages meet the jurisdictional threshold, particularly considering that Plaintiff's documented past medical expenses for over a year of

---

[44] *Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000) (*citing Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999)).  *See also Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at *3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages.  Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Ins. Co.*, No. 17-414, 2017 WL5762436, at *3 (M.D. La. Aug. 24, 2017) ("'Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test.'") (*quoting Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at * 3 (M.D. La. Jan. 6, 2012) (collecting cases)).
[45] R. Doc. 5, pp. 5-6.
[46] R. Doc. 5, pp. 6-7.

treatment amount to only $10,457.39.[47]  The sealed records indicate that the primary medical issue for Plaintiff is one herniated disc with "compression of the L5 nerve root,"[48] and bilateral knee/leg pain with right knee fluid, cartilage breakdown, and inflammation.[49]  However, there was no recommendation for surgery at the time of removal, nor is there a surgical recommendation in the medical records submitted, which Carroll acknowledges.[50]  There is ample authority from this Court and others in this Circuit, which has found that removing defendants failed to establish the jurisdictional threshold when alleging similar injuries, treatment, and medical expenses.  *See, e.g., Cole v. Mesilla Valley Transportation,* where this Court held that the plaintiff's medical expenses of $7,318 at the time of removal (which is not much less than Plaintiff's medical expenses here), with the possible additional cost of an MRI, physical therapy, and a recommendation for epidural steroid injections, along with several lumbar disc bulges, was not sufficient for federal jurisdiction.[51]  In *Cole,* this Court noted: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal."[52]  Even for herniated discs, "[t]his court recognizes that

---

[47] R. Doc. 5, p. 7.

[48] Plaintiff also contends that her "predominant injury sustained ….are …with respect to her low back…." R. Doc. 5, p. 8.

[49] R. Doc. 10, pp. 17, 20, 26-28.  There are not many details regarding Plaintiff's neck and shoulder injuries in the medical records, other than Plaintiff's reports of pain in those areas and Dr. Rathmann's diagnosis of cervicalgia. Carroll does not address these injuries in detail in the Memorandum.

[50] R. Doc. 5, p. 3 ("…it is unknown of (sic) whether low back surgery will be recommended.").

[51] No. 16-841, 2017 WL 1682561, at *6 (M.D. La. Mar. 15, 2017), *report and recommendation adopted,* No. 16-841, 2017 WL 1684515 (M.D. La. May 1, 2017).

[52] *Cole*, 2017 WL 1682561, at *5, *citing Barrow v. James River Insurance Company*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546, 2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annual cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with

9

"[w]hether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended."[53] "Accordingly, courts have found the lack of a recommendation for surgery to be significant in determining whether a plaintiff seeking damages including those for a herniated disc meets the amount in controversy requirement when balanced with other factors in the record."[54] Further, Dr. Greene opined that Plaintiff's right knee pain "will continue to improve" and was due to inflammation, not any mechanical issue.[55]  As it stands, Plaintiff's records only reflect minimal medical expenses and treatment of MRIs, x-rays, pain/muscle spasm medication, and physical/chiropractic therapy,[56] but this type of conservative treatment does not meet the jurisdictional threshold.[57]

Additionally, there is no evidence of the amount of Plaintiff's lost wages, as Carroll "does not have relevant information or documents to quantify any economic loss claim asserted by Allen

---

resultant mild central canal stenosis and bilateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed).

[53] *Thomas v. Louis Dreyfus Commodities, LLC*, No. 15-394, 2016 WL 1317937, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted,* No. 15-394, 2016 WL 1337655 (M.D. La. Apr. 1, 2016), *citing Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted,* 2011 WL 2937952 (M.D. La. July 14, 2011).

[54] *Thomas*, 2016 WL 1317937 at *4: *"See, e.g., Hebert v. Hanco Nat. Ins. Co*., No. 07–362, 2009 WL 255948, at *4– 5 (M.D. La. Feb. 3, 2009) (amount in controversy not satisfied where plaintiff 'suffers from a herniated disc, without any recommendation for surgery' and the plaintiff 'continues to work, continues to engage in activities of daily living, and does not seek damages for mental anguish'); *Espadron v. State Farm Mut. Auto. Ins. Co.,* No. 10–53, 2010 WL 3168417 (E.D. La. Aug. 9, 2010) (amount in controversy not satisfied where plaintiff in car crash suffered a 'herniated cervical disc [or] segmental cervical instability' and a 'herniated lumbar disc [or] segmental lumbosacral instability' and was a 'potential surgical candidate' and plaintiff stipulated that his damages did not exceed $50,000). There is no evidence in the record that Plaintiff's physicians have recommended him to undergo surgery for his bulging discs.")

[55] Carroll argues that Dr. Greene's diagnosis of knee inflammation does not take into account "the right knee MRI findings of a complete (full thickness) tear of cartilage in the medial femoral condyle." R. Doc. 5, p. 6 *citing* R. Doc. 10, p. 20.  However, Greene's notes reflect that Plaintiff brought her MRI results with her to the visit. R. Doc. 10, p. 27.  Furthermore, a tear in Plaintiff's knee cartilage, combined with the herniated disc and pain, is still unlikely to reach the jurisdictional minimum considering Plaintiff's treatment has only been conservative (even though allegedly on-going), and the lack of a surgical recommendation.

[56] R. Doc. 10, pp. 9-13, 15, 23-25, 27.

[57] *See Cole,* 2017 WL 1682561, at *5 and cases cited therein and reproduced *supra.*

at this time."[58]    However, Plaintiff's medical records reflect that she only missed a "few days" of

work due to her injuries, and thus lost wages do not appear to be substantial.[59]    Carroll likewise

asserts that he does not have all of Plaintiff's medical records, including nine months of treatment

with Mandy's Primary Health Care and Plaintiff's emergency room visit at Our Lady of the Lake

Regional Medical Center just after the accident "due to the preliminary nature of discovery in this

case (e.g. no exchange of written discovery and no lay or medical expert depositions.")."[60]

Although a plaintiff is usually in a better position to know information regarding the amount of

her damages and the extent of her injuries, that such information is more readily available to the

plaintiff does not absolve a removing party from its responsibility of discovering that information

**prior to removal** so that party may properly support its assertion that federal subject matter

jurisdiction exists.    Significantly, the Fifth Circuit has repeatedly stated that "protective" removals

are disfavored and has established timing rules that allow defendants to engage in discovery

regarding the amount in controversy prior to removal.[61]    Although these timing rules place the

onus of starting the thirty-day clock for removal on the plaintiff (at least when that period is to be

triggered by the initial pleading), it remains a removing defendant's burden to establish by a

preponderance of the evidence that federal subject matter jurisdiction exists *at the time of*

---

[58] R. Doc. 5, p. 7.

[59] R. Doc. 10, p. 7.

[60] R. Doc. 5, pp. 4, 6.

[61] In *Chapman v. Powermatic, Inc.,* 969 F.2d 160 (5th Cir. 1992), the Fifth Circuit held that the thirty-day removal period under the first paragraph is triggered only where the initial pleading "*affirmatively reveals on its face* that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* at 163 (emphasis added)    "The *Chapman* court… sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading. *Id.* Moreover, the *Chapman* court wanted to avoid encouraging defendants to remove cases prematurely for fear of accidentally letting the thirty-day window to federal court close when it is unclear that the initial pleading satisfies the amount in controversy. *Id.*" *Mumfrey v. CVS Pharmacy, Inc.,* 719 F.3d 392, 399 (5th Cir. 2013).  In this case, since the amount in controversy was not clear from Plaintiff's Petition (or the incomplete medical records, although it is unclear when Carroll obtained them), Carroll should have conducted discovery regarding the amount in controversy while this matter was pending in state court.

*removal.*[62] As one court recently noted, "[i]f the removing defendant does not have facts sufficient to support removal when the original petition is received, it is the removing defendant's responsibility to discover those facts before effecting removal. That is precisely why the 'other paper' removal rule exists, to ensure that removals will not be filed 'before their factual basis can be proven [by the removing defendant] by a preponderance of the evidence.'"[63] The fact that discovery has not yet been conducted does not absolve Carroll from sustaining his burden, and Carroll should have engaged in relevant discovery regarding the amount in controversy prior to removing this case.[64]

Carroll cites two Louisiana cases, one of which was recognized by the U.S. District Court for the Eastern District of Louisiana, for the propositions that "there is case law supportive of a $9,000 per month general damage award for neck and mid-back soft tissues strains," and, "It may be argued that the lowest general damages subject to award for a disc herniation which does not mandate surgical intervention is $75,000."[65] However, Carroll's cases are distinguishable: they are not from this Court, or from the Louisiana state courts within this Court's jurisdiction; they involve surgeries and evidence of other damages; and/or they are otherwise not persuasive.[66] As

---

[62] *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (emphasis added).

[63] *Bonvillian v. National Liability & Fire Ins. Co.*, No. 16-1708, 2017 WL 892311, at *3 (W.D. La. Feb. 1, 2017) (*quoting Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002)). *See also, Nordman v. Kansas City Southern Railway Co.*, No. 08-2025, 2009 WL 976493, at *3 (W.D. La. April 9, 2009) ("This court has historically demanded that removing defendants promptly satisfy their burden of establishing by a preponderance of the evidence the requisite amount in controversy. Otherwise, the case is swiftly remanded. The court has also long discouraged premature or protective removals of cases in which the amount in controversy is in doubt because of vague pleadings about 'serious' but unspecified injuries and the like. Those protective removals waste a great deal of time for the parties and the court. To hold that the removal period was triggered in this case by the original petition would be contrary to that policy, encourage wasteful protective removals, and be inconsistent with the rules and policy set forth in *Chapman* and related Fifth Circuit decisions.").

[64] This Court has addressed this issue with litigants in the past and has remanded cases such as this one, where the removing defendants failed to conduct the necessary discovery prior to removal and thereby failed to sustain their burden of establishing amount in controversy. *See, e.g., Autin v. Cherokee Ins. Co.*, No. 20-528, 2020 WL 7974292, at *1 (M.D. La. Dec. 7, 2020), *report and recommendation adopted,* No. 20-528, 2021 WL 41073 (M.D. La. Jan. 5, 2021).

[65] R. Doc. 5, pp. 7-8.

[66] R. Doc. 5, pp. 7-8. In *Desselle v. Allstate Insurance Company, et al.*, 2009-460 (La. App. 3 Cir. 11/4/09), 2009 WL 3637062, Louisiana's Third Circuit Court of Appeal affirmed a general damages award of $18,000 (in addition

to medical expenses and lost wages) to a plaintiff who was rear-ended. She suffered from cervical and thoracic back strains and additional pain in her neck and shoulder, as well as aggravation of pre-existing injuries from a prior accident. The plaintiff received conservative treatment over two months, but remained in pain as of the time of the trial. Plaintiff in this case argues that *Desselle* supports a general damages award of $9,000 for each month of treatment. R. Doc. 5, pp. 7-8. However, unlike this case, there was evidence that the *Desselle* plaintiff "still had problems doing housework and even helping her children fix their hair due to the accident" as of the time of trial. There is no evidence that Plaintiff is similarly limited. Furthermore, in affirming the award, the Third Circuit noted it was "very high": "While we find the award of $18,000.00 for general damage to be very high, it is not so excessive as to constitute an abuse of the great, even vast, discretion afforded to the trier of fact in the assessment of general damages." 2009 WL 3637062 at *1. Carroll likewise recognizes that $9,000 per months is unreasonable: "the more reasonable per month value range for these injuries of $2,500.00 – $3,000.00, which produces a general damage value range of $30,000.00 – $36,000.00"—which is still less than the required jurisdictional threshold. R. Doc. 5, p. 8.

In *Este' v. State Farm Ins. Companies,* 96-99 (La. App. 3 Cir. 7/10/96), 676 So.2d 850, 856, the plaintiff was rear-ended in a car accident and suffered pain in her neck, head, right arm and between her shoulders. She was diagnosed with a herniated disc, nerve compression at C4-5, and symptomatic spondylosis at C4–5 and C5–6. She received conservative treatment for months with a chiropractor, and was referred to an orthopedist who ultimately recommended surgery to resolve her constant pain. 676 So.2d at 855-56. The Third Circuit increased the jury's general damage award of $5,000 to $75,000, in light of cases involving similar injuries and testimony from the plaintiff's daughter regarding the plaintiff's inability to perform her prior activities at home and from the plaintiff's husband regarding the plaintiff's constant pain, for which she sought relief in a variety of ways every night. 676 So.2d at 857. Thus, in *Este',* there was a surgical recommendation; allegations of permanent disability; testimony from the plaintiff's daughter and husband regarding the plaintiff's pain and limitations; and testimony from the plaintiff that she was in continuous pain for 2 and a half years and could no longer engage in her general housework, "spring cleaning" twice a year, washing cars, painting the inside and outside of her house, and working in her yard. 676 So.2d 856-57.

The Eastern District's decision in *Williams v. Sentry Select Insurance Company*, No. 20-766, 2020 WL 1617291 (E.D. La. Apr. 2, 2020), which is attached to Carroll's Memorandum at R. Doc. 5-2, is likewise distinguishable from the instant matter. In *Williams,* which also featured a plaintiff who suffered disc herniation and disc bulges due to a rear-end car collision, the court considered that the plaintiff had made a pre-suit settlement demand for $95,000, in addition to his past medical expenses and jury demand, in denying remand: "Plaintiff's medical expenses and records, request for a jury trial in state court, and pre-removal settlement offer of $95,000, taken together, convince the Court the amount in controversy requirement is met in this case." *Id. at* *3. To the extent *Williams* agrees with *Este's* reasoning that "the lowest possible general damages award for petitioners with injuries akin to Plaintiff's is $75,000," it appears to conflict with the plethora of decisions from this Circuit finding that the amount in controversy was not met on similar injuries and treatment, *see* cases cited in the footnote *supra* (*e.g., Cole, Barrow, Robichaux, etc.*). Notably, in *Alonzo v. Shoney's, Inc.,* No. 00-3109, 2001 WL 15641 (E.D. La. Jan. 5, 2001), another division of the Eastern District declined to follow *Este'*: "Notwithstanding the cases cited by Shoney's [one of which was *Este'*] the Court has reviewed recent cases in which a plaintiff suffering from a cervical herniated disk has been awarded only $20,000 or $45,000 in general damages. *See, e.g., Lapeyrouse v. Wal–Mart Stores, Inc.,* 725 So.2d 61 (La. 5th Cir.1998) (awarded $45,000 in general damages); *Calcagno v. Gonzales,* 1999 WL 974471 (La.App. 5th Cir. Oct. 13, 1999) (awarding plaintiff $20,000). Furthermore, an award for general damages compensates a plaintiff for pain and suffering, and Alonzo testified in her deposition that she has "a pretty high tolerance for pain." (Pet. Removal, Ex. 8 at 62.) Accordingly, merely citing a few cases with awards of substantial general damages does not satisfy Shoney's burden of proving by a *preponderance of the evidence* that the *actual* amount in controversy exceeds $75,000. *See De Aguilar II,* 47 F.3d at 1412." 2001 WL 15641 at *4

Finally, in *Case v. Shelter Ins. Co.,* 2010-302 (La. App. 3 Cir. 10/6/10), 48 So.3d 1196, 1202, the Third Circuit awarded $100,000.00 in general damages to the plaintiff *who underwent back surgery* for a herniated disc. Had Plaintiff's doctors given a recommendation for surgery, or if Plaintiff had surgery, Carroll may have sustained his burden.

noted by the Eastern District, "the defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000."[67]

Finally, despite Plaintiff's Notice of No Objection, in which she does not dispute that Carroll has established the required amount in controversy,[68] this Court has an independent duty to determine if subject matter jurisdiction exists, and the parties cannot confer jurisdiction by agreement or waiver if it does not otherwise exist.[69]

Any doubt as the existence of subject matter jurisdiction is resolved in favor of remand.[70] The amount in controversy is not facially apparent from the Petition and Carroll has not met his burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs.[71] Accordingly, the undersigned *sua sponte* recommends that this matter be remanded to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[72]

---

[67] *Medina v. Johnstone*, No. 17-6351, 2017 WL 3911793, at *4 (E.D. La. Sept. 7, 2017) (*citing De Aguilar*, 47 F.3d at 1412).

[68] R. Doc. 11. Carroll also does not rely on Plaintiff's failure to include an La. C.C.P. art. 893(A)(1) statement. Even if Carroll had, however, such failure is insufficient to establish by a preponderance that the amount in controversy in this case is likely to exceed $75,000.00. This Court has held that a "plaintiff['s] failure to follow La. C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy," and such failure cannot, without more, carry Carroll's burden of establishing this Court's subject matter jurisdiction. *Weber v. Stevenson*, No. 07-595, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007) (a plaintiff's failure to include an allegation in the state court petition that damages are less than the federal jurisdictional minimum in accordance with La. C.C.P. art. 893 is entitled to some consideration, but it is not, in and of itself, determinative of the amount in controversy.). *See also Ford v. State Farm Mut. Auto. Ins. Co.,* No. 08-403, 2009 WL 790150, at *4 (M.D. La. Mar. 25, 2009) ("[A]ll three U.S. District Courts in the State of Louisiana have recognized that the failure to include an Article 893 stipulation alone is insufficient to establish that the jurisdictional minimum is in controversy.").

[69] *See Matter of Kutner*, 656 F.2d 1107, 1110 (5th Cir. 1981).

[70] *Gasch*, 491 F.3d at 281-82. *See also Manguno*, 276 F.3d at 723 ("[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.").

[71] "Because Defendant has not shown by a preponderance of the evidence that the amount in controversy likely exceeds the jurisdictional amount, the Court has no need to consider whether Plaintiffs can show to a legal certainty that they will not be able to recover in excess of that amount." *Medina v. Allstate Vehicle and Property Insurance Company,* 458 F. Supp. 3d 591, 601 (W.D. Tex. May 1, 2020).

[72] Plaintiff's claims in this case assert violations of state law; therefore, this Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### III.    Recommendation

Plaintiff's medical records that were submitted in response to the *sua sponte* Order show only conservative treatment totaling less than $11,000 and no surgical recommendation for an accident that occurred a year and a half ago.  The removing defendant Carroll did not provide any evidence of the amount of lost wages and the cases upon which Carroll relies are distinguishable.  Under these facts, Plaintiff's purported consent to removal is insufficient to establish the Court's subject matter jurisdiction.  As doubts about the propriety of removal are resolved in favor of remand, it is the *sua sponte* recommendation of the Magistrate Judge that this matter be **REMANDED** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction.

Signed in Baton Rouge, Louisiana, April 23, 2021.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**